Eli A. Fuchsberg, Esq.
The Jacob D. Fuchsberg Law Firm, LLP
3 Park Avenue, Suite 3700
New York, NY 10016
(212) 869-3500
e.fuchsberg@fuchsberg.com
*Attorneys for the Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
RICHARD MARTINEZ,

                            Plaintiff,

        -against-

UNITED STATES OF AMERICA,
ROBERT BEAUDOUIN, M.D.,
MANDEEP SINGH, P.A., YOON KANG, P.A.,
WARDEN MCC, THE GEO GROUP, INC.,
KINGSBROOK JEWISH MEDICAL CENTER,
THE BROOKLYN HOSPITAL CENTER,
PHILLIP MCPHEARSON, M.D., and
JOHN/JANE DOES Nos. 1-10,

                            Defendants.
--------------------------------------------------------------------X

**Civil Action No.
1:20-cv-7275**


**COMPLAINT &
JURY DEMAND**


**ECF Action**

        Plaintiff, RICHARD MARTINEZ (at times referred to as "Mr. Martinez"), by and through

his undersigned counsel, respectfully alleges and tenders the following as his Complaint and Jury

Demand against the UNITED STATES OF AMERICA, ROBERT BEAUDOUIN, M.D.,

MANDEEP SINGH, P.A., YOON KANG, P.A., WARDEN MCC, THE GEO GROUP, INC.,

KINGSBROOK JEWISH MEDICAL CENTER, THE BROOKLYN HOSPITAL CENTER,

PHILLIP MCPHEARSON, M.D., and JOHN/JANE DOES Nos. 1-10,  (collectively referred to as

"Defendants").

## PRELIMINARY STATEMENT

1.   Plaintiff brings this suit pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) and its progeny, under the Fifth and Eighth Amendments to the United States Constitution, for the willful failure and withholding of proper medical care and treatment, and access to proper medical care and treatment, which caused him to suffer cruel and unusual treatment while he remained a prisoner and in the custody of the United States Bureau of Prisons ("BOP"). Plaintiff further brings this suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq., for negligence and/or professional malpractice of individual defendants who were federal employees, in connection with the care and treatment they provided to him within the scope of their employment with the United States Bureau of Prisons. Plaintiff brings this suit under New York state laws on negligence and/or professional malpractice in connection with the care and treatment provided to Mr. Martinez by individual defendants who were not federal employees but independent medical providers or independent contractors who had contracted with the Bureau of Prisons to provide care and treatment to prisoners in the custody of the Bureau of Prisons.

2.   As a direct result of Defendants' wrongful acts and omissions, Plaintiff RICHARD MARTINEZ has suffered permanent and catastrophic injuries, including paralysis and advanced metastatic prostate cancer, for which he now seeks relief.

## JURISDICTION AND VENUE

3.   This Court has subject matter jurisdiction over the subject matter of this Complaint under the United States Constitution and pursuant to 28 U.S.C. § 1331 as raising a federal question under the Constitution of the United States of America and pursuant to 28 U.S.C. § 1346 (b) as seeking relief against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §

2671, et seq. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims as they are related and form part of the same case or controversy.

4.   This Court has personal jurisdiction over the Defendants because the alleged incidents occurred within the confines of this State.

5.   Venue is proper within the United States District Court for the Southern District of New York under 28 U.S.C. §§ 1391 and 1402 (b) in that a substantial part of the events giving rise to the claim occurred within the boundaries of the Southern District of New York.

**CONDITIONS PRECEDENT TO THIS LAWSUIT**

6.   Pursuant to the FTCA, on or about December 16, 2019, Plaintiff timely served an Administrative Claim, providing the BOP with the necessary information to investigate Plaintiff's claims and their worth.

7.   Upon receipt of additional records and information, on or about May 5, 2020, Plaintiff served a supplemental Administrative Claim providing further information as to Plaintiff's claims and their worth.

8.   It has been over six months since Plaintiff timely served his Administrative Claim and the BOP has failed to make a final disposition as to the claim. The Plaintiff thereby deems his Administrative Claim denied pursuant to 28 U.S.C. § 2675 (a).

9.   Plaintiff therefore exhausted administrative remedies with respect to his claims, and met all conditions precedent to this lawsuit.

10. This action is timely pursuant to 28 U.S.C. § 2401(b) in that it is begun within six months of the federal agency's deemed denial of Plaintiff's Administrative claim, originally filled on or about December 16, 2019.

3

## PARTIES

11. At all times herein mentioned, Plaintiff remained a prisoner in the custody of the United States BOP; first incarcerated in a facility known as the Queens Detention Facility ("QDF"), located at 182-22 150th Avenue, Jamaica, NY, beginning in July 2018, and thereafter transferred in or around August 2018, to an administrative housing facility located at 150 Park Row, New York, NY 10007, commonly known as the Metropolitan Correctional Center– New York ("MCC").

12. Defendant UNITED STATES OF AMERICA is the appropriate defendant for Plaintiff's claims under the Federal Tort Claims Act.

13. At all times herein mentioned, defendants ROBERT BEAUDOUIN, M.D., MANDEEP SINGH, P.A. and YOON KANG, P.A. (collectively at times referred to as the "MCC Medical Defendants") were medical personnel who were either employed by the BOP and/or MCC or contracted with the BOP and/or MCC, and were responsible for the day-to-day oversight of medical examination, testing, treatment and general health of inmates confined at MCC.

14. At all times herein mentioned, THE GEO GROUP, INC. ("GEO") is a corporation licensed to do business in the State of New York which operates and manages the Queens Detention Facility located at 182-22 150th Avenue, Jamaica, NY.

15. At all times herein mentioned, GEO provided personnel, including doctors, nurses, physician assistants, and others for the care and treatment of its inmates and/or patients and which held itself out to the public as offering professional services, medical care, treatment, and furnishing treatment facilities where inmates and/or patients, including plaintiff RICHARD MARTINEZ, could be treated for various ailments and could receive medical care, treatment and services.

16. At all times hereinafter mentioned, defendant GEO undertook to and did provide medical, diagnostic and technical examinations, evaluations, consultations, care, treatments, procedures, services, or advise of, for and to Plaintiff.

17. At all times herein mentioned, KINGSBROOK JEWISH MEDICAL CENTER ("KINGSBROOK"), is a hospital located at 585 Schenectady Ave., Brooklyn, NY 11203, which provided personnel, including doctors, nurses, physician assistants, and others for the care and treatment of its patients and which held itself out to the public as offering professional services, medical care, treatment, and furnishing treatment facilities where patients, including plaintiff RICHARD MARTINEZ, could be treated for various ailments and could receive medical care, treatment and services.

18. At all times hereinafter mentioned, defendant KINGSBROOK undertook to and did provide medical, diagnostic and technical examinations, evaluations, consultations, care, treatments, procedures, services, or advise of, for and to Plaintiff.

19. At all times herein mentioned, THE BROOKLYN HOSPITAL CENTER ("BROOKLYN HOSPITAL"), is a hospital located at 121 Dekalb Ave., Brooklyn, NY 11201, which provided personnel, including doctors, nurses, physician assistants, and others for the care and treatment of its patients and which held itself out to the public as offering professional services, medical care, treatment, and furnishing treatment facilities where patients, including plaintiff RICHARD MARTINEZ, could be treated for various ailments and could receive medical care, treatment and services.

20. At all times hereinafter mentioned, defendant BROOKLYN HOSPITAL undertook to and did provide medical, diagnostic and technical examinations, evaluations, consultations, care, treatments, procedures, services, or advise of, for and to Plaintiff.

21. At all times herein mentioned, defendant PHILLIP MCPHEARSON, M.D. "MCPHEARSON" was a physician duly licensed to practice medicine in the State of New York, who held himself out to the general public, and in particular RICHARD MARTINEZ, as a physician offering professional services and medical care and treatment.

22. At all times here mentioned, MCPHEARSON was an employee and/or agent of BROOKLYN HOSPITAL.

23. At all times here mentioned, MCPHEARSON was an independent contractor of BROOKLYN HOSPITAL.

24. At all times hereinafter mentioned, defendant MCPHEARSON undertook to and did provide medical, diagnostic and technical examinations, evaluations, consultations, care, treatments, procedures, services, or advise of, for and to Plaintiff.

25. With respect to Plaintiff's Bivens claims herein, defendant ROBERT BEAUDOUIN, M.D. (hereinafter "BEAUDOUIN") is sued in his individual capacity.

26. At all times herein mentioned, defendant BEAUDOUIN was or represented himself to be a physician duly licensed or authorized to practice medicine in the State of New York.

27. At all times hereinafter mentioned, defendant BEAUDOUIN was or represented to the public in general, and to the Plaintiff in particular, to be able, competent and qualified to skillfully diagnose, care for, and treat patients in general, and the Plaintiff in particular, in accordance with good and accepted standards of medical care and practice.

28. At all times hereinafter mentioned, defendant BEAUDOUIN undertook to and did provide medical, diagnostic and technical examinations, evaluations, consultations, care, treatments, procedures, services, or advise of, for and to Plaintiff.

29. With respect to Plaintiff's <u>Bivens</u> claims herein, defendant MANDEEP SINGH, P.A. (hereinafter "SINGH") is sued in his individual capacity.

30. At all times herein mentioned, defendant SINGH, was or represented himself to be a physician assistant duly licensed or authorized to practice medicine in the State of New York.

31. At all times hereinafter mentioned, defendant SINGH was or represented to the public in general, and to the Plaintiff in particular, to be able, competent and qualified to skillfully diagnose, care for, and treat patients in general, and the Plaintiff in particular, in accordance with good and accepted standards of medical care and practice.

32. At all times hereinafter mentioned, defendant SINGH undertook to and did provide medical, diagnostic and technical examinations, evaluations, consultations, care, treatments, procedures, services, or advise of, for and to Plaintiff.

33. With respect to Plaintiff's <u>Bivens</u> claims herein, defendant YOON KANG, P.A., (hereinafter "KANG") is sued in her individual capacity.

34. At all times herein mentioned, defendant KANG was or represented herself to be a physician assistant licensed or authorized to practice medicine in the State of New York.

35. At all times hereinafter mentioned, defendant KANG was or represented to the public in general, and to the Plaintiff in particular, to be able, competent and qualified to skillfully diagnose, care for, and treat patients in general, and the Plaintiff in particular, in accordance with good and accepted standards of medical care and practice.

36. At all times hereinafter mentioned, defendant KANG undertook to and did provide medical, diagnostic and technical examinations, evaluations, consultations, care, treatments, procedures, services, or advise of, for and to Plaintiff.

37. At all times herein mentioned, defendants "WARDEN MCC," and "JOHN/JANE DOES Nos. 1-10" (collectively at times referred to as "Administrative Defendants") were personnel employed by the BOP and/or MCC, and worked within the MCC in different capacities including, but not limited to, Wardens, Correctional Officers, administrative staff, and healthcare professionals. At all times herein mentioned, these defendants were responsible, in whole or in part, for the day-to-day operation and conditions of MCC, and for the health and safety of inmates confined within.

38. With respect to Plaintiff's Bivens claims herein, defendants "WARDEN MCC" and "JOHN/JANE DOES Nos. 1-10" are sued in their individual capacities.

39. Defendants "WARDEN MCC," and "JOHN/JANE DOES Nos. 1-10" are the fictitious names of persons still to be learned at MCC, who were in charge of the custody and care provided to Plaintiff, including but not limited to his medical visits to external providers.

## STATEMENT OF FACTS

40. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "39" of this complaint with the same force and effect as though fully set forth herein.

**MR. MARTINEZ'S 2018 ARREST and MEDICAL HISTORY in BOP CUSTODY at QDF**

41. On or around July 26, 2018, Mr. Martinez was arrested and held as a pre-trial detainee at QDF, a facility managed by GEO.

42. Mr. Martinez, a first-time drug offender, was 49 years-old at the time of his incarceration and had a medical history of high blood pressure (hypertension), diabetes, and high cholesterol (hyperlipidemia).

43. In August 2018, Mr. Martinez complained to GEO medical staff that there was blood in his urine (hematuria), as well as painful frequent urination. A nursing report by Shonda Holley, R.N., confirms a urine sample that is red or orange in color with foul odor.

44. Mr. Martinez was suspected of having a urinary tract infection ("UTI") and placed on antibiotics and directed to return to medical care in one week.

45. Upon information and belief, no urine culture was performed to confirm that Mr. Martinez had a UTI. Upon information and belief no other studies were ordered to evaluate the cause of Mr. Martinez's hematuria at this time.

46. Mr. Martinez was transferred to and housed at the MCC – New York, at some time in late August 2018 or early September 2018.

**MR. MARTINEZ'S MEDICAL HISTORY IN BOP COUSTODY AT MCC**

47. Following Mr. Martinez's transfer to the MCC, in late August or early September 2018, Mr. Martinez underwent urine analysis collected on September 11, 2018, which had abnormal results including presence of leukocyte esterase as well as casts.  These lab results were co-signed by defendant BEAUDOUIN, a physician, approximately eight months later on May 3, 2019. Upon information and belief, no further testing to evaluate Mr. Martinez's history of hematuria or abnormal urine results was ordered at this time.

48. On or around May 31, 2019, Mr. Martinez presented to defendant BEAUDOUIN with complaints including hematuria (blood in urine) that started nine months ago and was exacerbated in the past two weeks. BEAUDOUIN's assessment included a UTI. The plan was to prescribe antibiotics and have Mr. Martinez evaluated by a Urologist. The note by BEAUDOUIN for this date of treatment states: "REQUESTED CT SCAN OF ABDOMEN/PELVIS,A ND UROLOGY EVAL."

49. Upon information and belief, on or around May 31, 2019, BEAUDOUIN requested a computerized tomography (CT) scan with a scheduled target date of June 12, 2019 and an offsite Urology referral with a scheduled target date of June 26, 2019. The Urology referral indicates that a cystoscopy should have been performed at this time. Upon information and belief, no Urology consultation was performed until after Mr. Martinez became paralyzed in November 2019.

50. Urinalysis collected on June 3, 2019, again demonstrated gross hematuria (visible blood in urine) with red blood cells present.

51. On or around July 24, 2019, Mr. Martinez was sent to KINGSBROOK where a CT Scan was performed, without contrast, of Mr. Martinez's abdomen and pelvis, for hematuria and to rule out a renal mass. The results from this scan included, "[M]ultiple enlarged lymph nodes with an enlarged prostate (5.1cm) and a clinical history of hematuria raises suspicion for malignancy. Recommend correlation with PSA." (emphasis added).

52. Prostates specific antigen (PSA) testing collected on or around July 31, 2019, was critically elevated at 174 ng/mL (Normal range is .0064-4 ng/mL). Despite the suspicion of malignancy and correlation with severely elevated PSA numbers, Mr. Martinez was not allowed to be seen for a proper medical consultation by a Urologist and/or Oncologist.

53. On or around August 4, 2019, defendant BEAUDOUIN created an administrative note indicating that he "WILL REWRITE UROLOGY NOTE TO REQUEST A PROSTATE BIOPSY". The scheduled target date for the Urology consult was now August 13, 2019, with a provisional diagnosis including to rule out prostate cancer. Upon information and belief, no Urology referral and/or consultation was performed. Mr. Martinez was not allowed to see a Urologist.

54. A repeat PSA collected on August 14, 2019 showed an increase to <u>202 ng/mL. (Normal</u>
<u>range is .0064-4 ng/mL)</u>, over 50 times the normal limit. Despite this further ominous test result,
Mr. Martinez was not allowed to be seen by a Urologist.

55. On or around August 28, 2019, defendant BEAUDOUIN urgently referred Mr.
Martinez to the Emergency Room for evaluation. The provisional diagnosis was "RULE OUT
PROSTATE CANCER".  BEAUDOUIN requested that the patient be evaluated by a Urologist for
possible in-patient treatment and admission.

56. On or around August 30, 2019, Mr. Martinez was taken to defendant BROOKLYN
HOSPITAL. Mr. Martinez complained of blood in his urine, penile pain, left hip pain, and
increased fatigue over the past month. Urinalysis again confirmed blood in Mr. Martinez's urine
and that he was negative for UTI. The attending physician was defendant MCPHEARSON.
Although Mr. Martinez was specifically sent to the ER to evaluate him for prostate cancer, upon
information and belief, <u>Mr. Martinez was not seen by Urology nor had a prostate biopsy, nor any</u>
<u>other testing to evaluate and/or treat Mr. Martinez's prostate cancer</u>.  Mr. Martinez was discharged
from BROOKLYN HOSPITAL the same day and <u>advised to follow up with a Urologist</u> and his
PCP within 3 days of discharge. Upon information and belief, <u>Mr. Martinez was not taken to be</u>
<u>seen by a Urologist as indicated, despite multiple pleas for medical attention</u>.

57. <u>On or around September 3, 2019, Bernard Alan Seidler, criminal attorney for Richard</u>
<u>Martinez, wrote to the MCC Office of the Warden advising of Mr. Martinez's lack of medical</u>
<u>treatment and his need for help</u>. The letter from Mr. Seidler also enclosed a letter from Mr.
Martinez advising that he is peeing blood on a regular basis and in a lot of pain, with pain in his
leg making it difficult to walk. Mr. Martinez notes that he has tried on several occasions to seek
medical care but has been met with negative requests and his condition is still unknown.

11

58. On or around September 13, 2019, a Sick Call request by Mr. Martinez to the BOP Doctor states that he is still urinating blood and is in pain, with pain in his leg.

59. On or around September 16, 2019, in a Sick Call request to the facility doctor, Mr. Martinez indicates that "I AM URINATING BLOOD A HAVE PAIN".

60. On or around September 21, 2019, Mr. Martinez is seen by defendant physician assistant KANG. Mr. Martinez reported "peeing a lot of blood", and persistent gross hematuria as well as pain. Urinalysis performed on this date indicated gross hematuria with elevated white blood cell count, leukocytes esterase present, and elevated red blood cells. Defendant BEAUDOUIN writes yet another request for the patient to be referred to the Urology Clinic. Upon information and belief, this request for an offsite urology consult was approved on September 26, 2019. Upon information and belief, Mr. Martinez was still not taken by the defendants for a Urology consultation. Mr. Martinez was not allowed to see a Urologist.

61. Further Sick Calls, expressing Mr. Martinez's persistent, serious, and severe complaints were made on or around September 27, 2019 ("GOOD morning, I am with a lot of pain fron my shoulder all the way to my leg an my left side"), October 1, 2019 ("I STILL URINATIN BLOOD AND I HAVE A LOT OF PAIN"), October 13, 2019 ("I STILL URINATING BLOOD AND I AM ON PAIN"), and October 15, 2019. ("I AM STILL URINATING BLOOD AND I AM ON PAIN"). Despite Mr. Martinez's pleas for help and medical attention, Mr. Martinez was not allowed to see a Urologist until after he became a paraplegic in November 2019.

62. On or around October 18, 2019, defendant BEAUDOUIN created an administrative note indicating that: "PATIENT WAS SCHEDULED FOR AN APPOINTMENT AT THE UROLOGYCLINIC YESTERDAY, 10/18/19. HE WAS NOT TAKEN TO HIS APPOINTMENT BY [THE] CORRECTIONAL SERVICES DEPT."

63. On or around October 24, 2019, Mr. Martinez made another Sick Call, now stating that: "I BEEN having a lot of pain on my chest and back".

64. On or around October 24, 2019, Mr. Martinez was referred by defendant physician assistant SINGH to Cardiology for an ECHO. It is noted that Mr. Martinez complained of sharp chest pain at night when lying down, which had been going on for a few weeks.

65. On or around October 26, 2019, Mr. Martinez presented to MCC Health Services and was seen by defendant SINGH, a physician's assistant. Mr. Martinez complained of lower back pain radiating to his left side of the groin for five weeks and that the pain was sharp and getting worse. As per the MCC records, Mr. Martinez was advised to follow-up with Sick Call as needed and return if his condition worsened. Mr. Martinez was given Tylenol. Upon information and belief, no radiology or other testing was ordered to evaluate the back pain.

66. On or around October 29, 2019, Mr. Martinez again presented to defendant BEAUDOUIN at the Chronic Care Clinic. He was noted to complain of upper and lower back pain for the past ten days, hematuria (blood in urine), dysuria (painful urination), and nocturia (waking up in the night to urinate). BEAUDOUIN prescribed Tamsulosin (Flomax) for "disorder of the prostate", and Tylenol for pain.  The disposition is to follow up at Sick Call as needed or follow-up in six months. It is noted that the patient has pending Urology and Cardiology appointments, although, upon information and belief, these were never properly scheduled nor performed.

67. On or around November 2, 2018, Mr. Martinez again wrote to the Sick Call physician, stating "I STILLONA LOT OF PAIN AND URINATING BLOOD."

68. On or around November 4, 2019, Mr. Martinez again wrote to the Sick Call physician, stating, "STILL URINATING BLOOD AND I HAVE A LOT OF PAIN."

69. On or around November 7th, 2019, Mr. Martinez was visited by defendant physician assistant SINGH. Mr. Martinez pleaded for medical help due to his intense chest pain, leg pain/numbness with difficulty walking, and continuing to have blood in his urine. Mr. Martinez was informed by defendant SINGH that he would not die from urinating blood as he had been urinating blood now for seven months. Mr. Martinez advised he was in intense pain and that this was a medical emergency. SINGH informed Mr. Martinez that "It is only an emergency if you have a heart attack or stop breathing." SINGH further ordered Mr. Martinez to look at the security camera so that there would be proof that Mr. Martinez was breathing and that therefore it was not a medical emergency. SINGH also directed that Mr. Martinez shave his chest to make life resuscitation efforts easier when Mr. Martinez had a heart attack.

70. On or around November 7, 2019, Bernard Alan Seidler, Mr. Martinez's criminal attorney, filed a letter on ECF, to the Hon. Alison J. Nathan, advising of Mr. Martinez's worsening medical condition and lack of medical care, despite the previous letter to the Warden. Additionally, the MCC records department was refusing to provide Mr. Martinez's medical records despite requests made on August 5, 2019 and October 1, 2019.

## MR. MARTINEZ'S PARALYSIS DUE TO SPINAL METASTASIS FROM PROSTATE CANCER

71. Mr. Martinez's condition continued to worsen and by on or around November 10, 2019, he could barely stand, was in severe pain, and began experiencing urinary incontinence. Mr. Martinez further spoke to SINGH about his deteriorating condition, but was callously advised that his condition was not an emergency and that SINGH had already spoken to the doctor about his case.

14

72. From on or about November 10, 2019 through on or about November 12, 2019 Mr. Martinez was physically unable to get out of bed. The medical staff and guards were advised of Mr. Martinez's condition but failed to take timely and appropriate action to ascertain why Mr. Martinez could no longer walk.

73. On or around November 12, 2019, Mr. Martinez was evaluated by defendant BEAUDOUIN who noted that Mr. Martinez complained of numbness from the upper abdomen to lower legs, associated with weakness, for the past three days. By this time, Ms. Martinez was unable to bear weight on his legs due to weakness. Motor function of the lower extremities was measured as 0 out of 5. BEAUDOUIN requested transfer to a local hospital to rule out nerve root compression.

74. On or around November 12, 2019, Mr. Martinez was taken to New York Presbyterian Hospital where an MRI of the Thoracic Spine showed a metastatic lesion at the Thoracic (T) vertebra 4 (large destructive mass) with extension from the dorsal aspect into the spinal canal with chord compression. Mr. Martinez was transferred to Bellevue Hospital for emergency decompression surgery.

75. On or around November 13, 2019, Mr. Martinez underwent a T3-T5 laminectomy with debulking of the spinal tumor.

76. Following spinal surgery on or around November 13, 2019, Mr. Martinez was found to be paraplegic and was not able to regain functionality of his legs or urinate without the use of a catheter. Further, Mr. Martinez was diagnosed with Stage IV prostate cancer and was sent to NYU Langone for Radiation therapy. According to a note by defendant BEAUDOUIN from on or around December 2, 2019, the "PATIENT'S PROGNOSIS IS POOR."

77. On or around December 16, 2019, Mr. Martinez was transferred to KINGSBROOK for inpatient rehabilitation. A bone scan performed on or around March 2, 2020, indicated multiple regions suspicious for metastasis including left shoulder, bilateral ribs, bilateral scapulae, spine at L3, pelvic bones, and right proximal femur. A CT of the thoracic spine from March 24, 2020, shows extensive sclerotic metastases involving the sternum, bilateral scapulae, thoracic spine, and multiple bilateral ribs with additional nodules in the thyroid.

78. Despite surgical intervention, physical therapy, radiation treatment, and other medical treatment, Mr. Martinez is currently paralyzed with Stage IV prostate cancer. As a direct result of Defendants' acts and omissions, Plaintiff suffered severe and permanent injuries including unmonitored prostate cancer, advanced prostate cancer, stage-four prostate cancer, bone metastasis, spinal cord compression, need for spinal cord decompression surgery, paralysis, incontinence, severe permanent neurological deficits, loss of chance of cure, decreased life expectancy, ileus, loss of the ability to ambulate independently, need for extensive medical treatment including chemotherapy and radiation, excruciating pain and suffering, mental distress, fear, anxiety, and discomfort, frustration and loss of quality of life, loss of enjoyment and pleasures of life, loss of income, as well as attendant losses, including, but not limited to, past and future medical expenses.

79. Specifically, during relevant times, MCC Medical Defendants knew of and disregarded an excessive risk to Mr. Martinez's health, by failing to take adequate steps to provide him with proper medical care, treatment, and services, including but not limited to immediate referral to a urology specialist, despite their knowledge that Mr. Martinez had chronic hematuria, painful urination, severely elevated PSA levels, radiology confirming concern for malignancy, lower back pain, leg pain, and chest pain. Mr. Martinez's condition, of a known malignant disease, was a

medical emergency that is well known to cause permanent irreversible growth and metastasis unless promptly controlled and treated. These defendants' acts and omissions in failing to provide treatment for, and access to treatment for, Plaintiff's serious medical condition were so far below acceptable standards of care, that they could not have been making truly medical judgments.

80. In addition, during relevant times, Administrative Defendants knew of and disregarded an excessive risk to Mr. Martinez's health, by failing to take reasonable measures to provide him with access to proper medical attention including but not limited to visits to a Urologist or Oncologist even though they were informed by Medical Defendants and/or Mr. Martinez himself that he was suffering from a significant medical illness likely to cause permanent irreversible injury, and that their intervention could prevent the unnecessary and wanton infliction of prolonged pain and suffering.

81. Upon information and belief, during all times mentioned in this complaint, the Defendants were acting in their individual and official capacity, under color of law, to wit, under color of constitution, statute, ordinance, laws, rules, regulations, policies, customs and usages of the United States.

### AS AND FOR A FIRST CAUSE OF ACTION

### Plaintiff v. Defendants BEAUDOUIN, SINGH, KANG, WARDEN MCC, and JOHN/JANE DOES Nos. 1-10 in their individual capacities

### Bivens Claim – Eighth Amendment – Cruel and Unusual Punishment

82. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "81" of this complaint with the same force and effect as though fully set forth herein.

83. Defendants' conduct deprived Plaintiff of his rights protected under the Eighth Amendment to the United States Constitution, in that they failed to provide Plaintiff with adequate

medical care although they knew or should have known that doing so posed an excessive risk to his health.

84. Defendants' deliberate indifference to Plaintiff's serious medical needs constitutes cruel and unusual punishment, and the unnecessary and wanton infliction of pain that the Eighth Amendment prohibits under Estelle v. Gamble, 429 U.S. 97 (1976) and its progeny.

85. Defendants have deprived Plaintiff of such rights under color of law and are liable to Plaintiff pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) and its progeny.

86. Beginning on August 25, 2018, and particularly between May 31, 2019 and November 12, 2019, Defendants knew or should have known that Mr. Martinez was afflicted with a serious malignant disease requiring prompt evaluation and treatment to avoid serious health consequences, including metastasis, paralysis, and death.  However, defendants did not ensure proper treatment and/or referrals, including to urology and/or oncology, so that the required work-up and treatment could be provided.

87. By May 31, 2019, defendant BEAUDOUIN requested a CT Scan of Mr. Martinez's abdomen and pelvis, as well as a urology evaluation. However, no urology evaluation was performed.

88. When the CT Scan was finally performed, on July 24, 2019, the results were markedly abnormal and confirmed, or should have confirmed, concern of malignancy due to prostatic hyperplasia (enlarged prostate) in conjunction with the patient's chronic hematuria, frequent dysuria, and multiple enlarged lymph nodes despite grossly normal blood work (indicating no infection to explain the enlarged lymph nodes). The CT Scan report itself indicates "suspicion for malignancy" with recommendation for PSA testing.

18

89. <u>By August 4, 2019, Mr. Martinez is noted to have a PSA level of 174 ng/Ml, over 40 times the normal level, which is highly suggestive of prostate cancer</u>. Despite these alarming findings, including chronic hematuria, enlarged prostate, enlarged pelvic lymph nodes without infection, and severely elevated PSA levels, demonstrating an extremely high likelihood of prostate cancer, Mr. Martinez was not referred for proper treatment including to Urology and/or Oncology. Indeed, defendant BEAUDOUIN notes that urology evaluation and prostate biopsy is warranted, and ordered, however, neither was performed.

90. As set forth more fully above, including in the Statement of Facts, between May 31, 2018 and November 12, 2018, defendants BEAUDOIN, SINGH, and KANG knew that Mr. Martinez had a malignant condition, likely prostate cancer, and that an unmonitored malignant condition, including prostate cancer, is a debilitating medical emergency that can lead to metastasis, loss of chance of cure, paralysis and death, even in a short span of time. Hence, they knew that Mr. Martinez needed to be seen by an appropriate medical provider, including a urologist and/or oncologist, to consider evaluation and treatments of Mr. Martinez's condition.

91. As set forth more fully above, including in the Statement of Facts, between May 31, 2018 and November 12, 2018, Mr. Martinez complained of new on-set low back pain with radiculopathy and leg pain, as well as difficulty ambulating, but no medical referrals or imaging to rule out a spinal mass was performed.

92. Defendants were deliberately indifferent to Mr. Martinez's serious medical needs, in that they failed to take reasonable measures to provide Mr. Martinez with proper medical treatment, or access to proper medical treatment, for several months, even though they knew that they had an opportunity to intervene and prevent the exacerbation of Plaintiff's injuries and

damages. Instead, Mr. Martinez was cruelly allowed to continue experiencing pain and blood in his urine while his untreated prostate cancer was allowed to advance and spread.

93. Indeed, by letter dated September 3, 2019, to the office of the MCC Warden, Mr. Martinez's attorney advised of Mr. Martinez's persistent complaints and that he was not receiving necessary medical care and treatment. This was after Mr. Martinez's markedly abnormal CT Scan indicating that he likely had prostate cancer and needed to be seen by Urology.

94. Further, between September 13, 2019 and November 4, 2019, Mr. Martinez made numerous complaints to the defendants about urinating blood, painful urination, and pain radiating from his shoulder all the way to his leg, progressing to sharp lower back pain radiating to the left side of his groin, to severe lower back pain, to severe chest pain and difficulty walking. In total there at least ten separate complaints of hematuria and dysuria (9/13/19, 9/16/19, 9/17/19, 9/21/19, 9/27/19, 10/1/19, 10/13/19, 10/1/19, 10/24/19, 11/2/19, and 11/4/19). These complaints are in conjunction with defendants' knowledge of markedly abnormal CT findings suggestive of malignancy, severely elevated PSA levels, and numerous abnormal urinalysis tests. In fact, multiple requests for urological evaluations are made but never acted upon due the defendant's deliberate indifference to the health and safety of Mr. Martinez.

95. Indeed, even when Mr. Martinez complained of new on-set lower back pain with radiculopathy and difficulty walking no referrals or imaging was ordered or performed.

96. In fact, comments made by individual Defendants evidence that they were mocking Mr. Martinez, accusing him of exaggerating and over-reacting to his complaints of pain and blood in his urine. As set forth more fully in the Statement of Facts, on or around November 7, 2019, Mr. Martinez was told by defendant SINGH that he had urine in his blood for eight months so that it would not kill him. Defendant SINGH further advised Mr. Martinez, in jest, that given his chest

pain he should shave his chest in case he needed to be resuscitated. Upon hearing Mr. Martinez's please for medical help, defendant SINGH commented that Mr. Martinez had been evaluated by the doctors and that his complaints did not warrant urgent treatment, stating that "It is only an emergency if you have a heart attack or stop breathing". Further, Defendant SINGH directed that Mr. Martinez face the prison cameras so that he could be observed breathing. Defendants further failed to provide Mr. Martinez with necessary emergency care when he reported lower leg pain, difficulty walking, and urinary incontinence.

97. Despite their knowledge that Mr. Martinez was facing a substantial risk of debilitating permanent injury, Defendants had Mr. Martinez wait for an excessively long period of time before receiving proper medical treatment. As set forth more fully above, Mr. Martinez did not see a urologist until after he became paraplegic on or around November 13, 2019. Moreover, Mr. Martinez was not timely referred to Urology or another medical provider following his abnormal CT Scan on July 24, 2019, despite multiple recommendations and/or orders for Urology consultations.  Mr. Martinez was sent to the Brooklyn Hospital Center without proper history or referral to urology. Even when Mr. Martinez returned from Brooklyn Hospital Center on August 30, 2019, with referral to Urology, Mr. Martinez was never taken to be seen by any Urologist or Urology Clinic.

98. As seen above, between August 25, 2018 and November 12, 2019, and prior and subsequent thereto, Ms. Martinez repeatedly informed Defendants of the urgency of his medical needs in visibly obvious ways, and pleaded to be taken to a proper medical provider, including a urologist.

99. As seen above, between August 25, 2018 and November 12, 2019, and prior and subsequent thereto, defendants WARDEN MCC, and JOHN/JANE DOES Nos. 1-10 failed to take steps to schedule, arrange, or allow necessary medical visits to occur.

100.   Between August 25, 2018 and November 12, 2019, defendants BEAUDOUIN, SINGH, and KANG failed to ensure that BOP employees in the MCC who interacted with Mr. Martinez knew that he had a debilitating medical emergency and required close and timely medical attention, monitoring, and follow up, including urology consultations.

101.   Between August 25, 2018 and November 12, 2019, defendants WARDEN MCC, and JOHN/JANE DOES Nos. 1-10   knew that Mr. Martinez he had a debilitating medical emergency and required close and timely medical attention, monitoring, and follow up, including referrals for medical attention, but failed to allow for the necessary medical referrals to occur despite multiple requests for medical referrals by medical professionals including BEAUDOUIN, MCPHEARSON, KINGSBROOK and BROOKLYN HOSPITAL.

102.   Defendants further failed to respond to the requests for Mr. Martinez's medical records made on August 5, 2019 and October 1, 2019, by his attorney, in violation of New York State and Federal record disclosure laws, as the defendants were deliberately indifferent and/or willfully did not want to make Mr. Martinez's condition and complaints known.

103.   The acts and omissions of Defendants described more fully above were outside of the scope of "medical or related functions" as defined in 42 U.S.C. § 233(a). The acts and omissions of Defendants SINGH, KANG, and BEAUDOUIN described more fully above, in failing to provide treatment for, or access to treatment for, Plaintiff's serious medical condition were so far below acceptable standards of care, that Defendants could not have been making truly medical judgments.

104.    Defendants were deliberately indifferent to Mr. Martinez's serious medical needs, and as a result of their action or lack thereof, Plaintiff's rights under the Eighth Amendment were violated, causing Plaintiff permanent injury and unnecessary, prolonged pain.

105.    Such actions of the defendants caused to subject the Plaintiff in the custody or under the physical control of the United States Government to cruel, inhuman, or degrading treatment or punishment prohibited by the Eighth Amendment to the Constitution of the United States and constitute a blatant violation of Plaintiff's civil rights secured by laws of the United States.

106.    As a direct, legal and proximate result of the foregoing, including the aforesaid willful, deliberately indifferent, reckless and negligent acts and omissions and medical malpractice of the defendants, Plaintiff suffered injuries and damages including but not limited to unmonitored prostate cancer, advanced prostate cancer, stage-four prostate cancer, bone metastasis, spinal cord compression, need for spinal cord decompression surgery, paralysis, incontinence, severe permanent neurological deficits, loss of chance of cure, decreased life expectancy, ileus, loss of the ability to ambulate independently, need for extensive medical treatment including chemotherapy and radiation, excruciating pain and suffering, mental distress, fear, anxiety, and discomfort, frustration and loss of quality of life, loss of enjoyment and pleasures of life, loss of income, as well as attendant losses, including, but not limited to, past and future medical expenses.

### AS AND FOR A SECOND CAUSE OF ACTION

### Plaintiff v. Defendants BEAUDOUIN, SINGH, KANG, WARDEN MCC and JOHN/JANE DOES Nos. 1-10 in their individual capacities

### Bivens Claim – Fifth Amendment – Substantive Due Process

107.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "106" of this complaint with the same force and effect as though fully set forth herein.

108.    Defendants' conduct deprived Plaintiff of his substantive due process rights protected under the Fifth Amendment to the United States Constitution, in that they failed to provide Plaintiff with adequate medical care although they knew or should have known that doing so posed an excessive risk to his health.

109.    Defendants have deprived Plaintiff of such rights under color of law and are liable to Plaintiff pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) and its progeny.

110.    Beginning on August 25, 2018, and particularly between May 31, 2019 and November 12, 2019, Defendants knew or should have known that Mr. Martinez was afflicted with a serious malignant disease requiring prompt evaluation and treatment to avoid serious health consequences, including metastasis, paralysis, and death. However, defendants did not ensure proper treatment or referrals, including to Urology and/or Oncology, so that the required work-up and treatment could be provided.

111.    As set forth more fully above, including in the Statement of Facts, between May 31, 2018 and November 12, 2018, Mr. Martinez complained of new on-set low back pain with radiculopathy, as well as difficulty ambulating, but no medical referrals or imaging to rule out a spinal mass was performed.

112.    Ms. Martinez's malignant disease was objectively serious in that it was a condition of urgency that was observable, with confirmed correlated testing, that caused Mr. Martinez extreme pain, degeneration, and significant loss of quality of life.

113.    As set forth more fully above, including in the Statement of Facts, between May 31, 2018 and November 12, 2018, defendants BEAUDOUIN, SINGH, and KANG knew that Mr. Martinez likely had a malignant condition, and that an unmonitored malignant condition, including

prostate cancer, is a debilitating medical emergency that can lead to metastasis, loss of chance of cure, paralysis and death, even in a short span of time. Hence, they knew that Mr. Martinez needed to be seen by an appropriate medical provider including a Urologist and/or Oncologist to consider evaluation and treatments of Mr. Martinez's condition.

114.    Defendants failed to take reasonable measures to provide Mr. Martinez with proper medical treatment, or access to proper medical attention, for several months, even though they knew that they had an opportunity to intervene and prevent the exacerbation of Plaintiff's injuries and damages.

115.    Despite their knowledge that Mr. Martinez was facing a substantial risk of debilitating permanent injury, Defendants had Mr. Martinez wait for an excessively long period of time before receiving proper medical treatment. As set forth more fully above, Mr. Martinez did not see a urologist until after he became paraplegic on or around November 13, 2019. Moreover, Mr. Martinez was not timely referred to Urology or another medical provider following his abnormal CT Scan on July 24, 2019, despite multiple recommendations and/or orders for Urology consultations.  Mr. Martinez was sent to the Brooklyn Hospital Center without proper history or referral to urology. Even when Mr. Martinez returned from Brooklyn Hospital Center on August 30, 2019, with referral to Urology, Mr. Martinez was never taken to be seen by any Urologist or Urology clinic.

116.    As seen above, between May 31, 2018 and November 12, 2018, and prior and subsequent thereto, Mr. Martinez repeatedly informed Defendants of the urgency of his medical needs in visibly obvious ways, and pleaded to be taken to a Urologist.

117.    As seen above, between August 25, 2018 and November 12, 2019, and prior and subsequent thereto, defendants WARDEN MCC, and JOHN/JANE DOES Nos. 1-10 failed to take steps to schedule, arrange, or allow necessary medical visits to occur.

118.    Between August 25, 2018 and November 12, 2019, defendants BEAUDOUIN, SINGH, and KANG failed to ensure that BOP employees in the MCC who interacted with Mr. Martinez knew that he had a debilitating medical emergency and required close and timely medical attention, monitoring, and follow up, including urology consultations.

119.    Indeed, even when Mr. Martinez complained of new on-set lower back pain with radiculopathy and difficulty walking no referrals or imaging was ordered or performed.

120.    Defendants further failed to respond to the requests for Mr. Martinez's medical records made on August 5, 2019 and October 1, 2019, by his attorney, in violation of New York State and Federal record disclosure laws, as the defendants were deliberately indifferent and/or willfully did not want to make Mr. Martinez's condition and complaints known.

121.    The acts and omissions of Defendants described more fully above were outside of the scope of "medical or related functions" as defined in 42 U.S.C. § 233(a). The acts and omissions of Defendants BEAUDOUIN, SINGH, and KANG, described more fully above, in failing to provide treatment for, or access to treatment for, Plaintiff's serious medical condition were so far below acceptable standards of care, that Defendants could not have been making truly medical judgments.

122.    Defendants failed to provide Plaintiff with adequate medical care although they knew or should have known that doing so posed an excessive risk to his health, and as a result of their action or lack thereof, Plaintiff's substantive due process rights protected under the Fifth Amendment to the United States Constitution were violated.

123.   As a direct, legal and proximate result of the foregoing, including the aforesaid willful, deliberately indifferent, and negligent acts and omissions and medical malpractice of the defendants, Plaintiff suffered injuries and damages including but not limited to unmonitored prostate cancer, advanced prostate cancer, stage-four prostate cancer, bone metastasis, spinal cord compression, need for spinal cord decompression surgery, paralysis, incontinence, severe permanent neurological deficits, loss of chance of cure, decreased life expectancy, ileus, loss of the ability to ambulate independently, need for extensive medical treatment including chemotherapy and radiation, excruciating pain and suffering, mental distress, fear, anxiety, and discomfort, frustration and loss of quality of life, loss of enjoyment and pleasures of life, loss of income, as well as attendant losses, including, but not limited to, past and future medical expenses.

## AS AND FOR A THIRD CAUSE OF ACTION

### Plaintiff v. Defendant UNITED STATES OF AMERICA

### Federal Tort Claims Act- Medical Malpractice

124.   Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "123" of this complaint with the same force and effect as though fully set forth herein.

125.   Commencing on or about August 25, 2018, and at all times herein mentioned, defendant United States of America, individually or through its agents, servants, and/or employees including defendants BEAUDOUIN, SINGH, KANG and GEO undertook and endeavored to, and did advise and treat Mr. Martinez professionally as a healthcare provider or physician, including providing diagnosis, care, and treatment for his hematuria (blood in urine), painful urination, enlarged prostate, enlarged lymph nodes, body pain, lower leg pain, low back pain, chest pain, radiculopathy, and other medical conditions.

126.    Defendants BEAUDOUIN, SINGH, and KANG were federal employees and were acting within the scope of their employment with the federal government when rendering care and treatment to Plaintiff RICHARD MARTINEZ.

127.    At all times complained of herein, defendant BEAUDOUIN was a physician and medical professional duly licensed to practice in the State of New York

128.    At all times complained of herein, defendant BEAUDOUIN represented himself to be a skilled, competent and careful physician and healthcare provider with the knowledge and capacity to practice medicine in accordance with the standards common and acceptable in the community.

129.    As set forth herein, treatment of Mr. Martinez by defendant BEAUDOUIN fell below acceptable standards and skills.

130.    At all times complained of herein, defendants SINGH and KANG were physician assistants and medical professionals duly licensed to practice in the State of New York

131.    At all times complained of herein, defendants SINGH and KANG represented themselves to be a skilled, competent and careful physician assistants and healthcare providers with the knowledge and capacity to practice medicine in accordance with the standards common and acceptable in the community.

132.    As set forth herein, treatment of Mr. Martinez by defendants SINGH and KANG fell below acceptable standards and skills.

133.    At all times complained of herein, defendant GEO was contracted by the United States of America to provide physician and medical professional care to inmates.

134.    At all times complained of herein, defendant GEO represented itself as an organization able to provide skilled, competent and careful physicians and healthcare providers

with the knowledge and capacity to practice medicine in accordance with the standards common and acceptable in the community.

135.     As set forth herein, treatment of Mr. Martinez by defendant GEO fell below acceptable standards and skills.

136.     Defendants thus breached the duty they owed to Mr. Martinez

137.     Defendants did not possess the necessary skill to treat Mr. Martinez.

138.     Defendants neglected to apply the skill they did have.

139.     Defendants did not use reasonable care in applying the skill they had.

140.     Defendants mistreated Mr. Martinez and engaged in medical practice which fell below the customary and acceptable standards.

141.     Between August 25, 2018 and November 12, 2019, defendants BEAUDOUIN, SINGH, KANG and GEO knew that Mr. Martinez had blood in his urine and knew that he had a debilitating medical emergency and required close and timely medical attention, monitoring, and follow up, including urology consultations.

142.     Once blood was noted in Mr. Martinez's urine in or around August 25, 2018, with a suspected UTI, a culture of Mr. Martinez's urine should have been performed by GEO to confirm that in fact Mr. Martinez had a UTI explaining the blood in his urine. This was not done and was a violation of acceptable standards of medical practice. Additionally, given Mr. Martinez's age as well as signs and symptoms, a PSA test should have been ordered and a rectal prostate exam performed. This was not done and was also a violation of acceptable standards of medical care and practice.

143.    A work-up for hematuria should also include imaging (including a CT Scan) as well as cystoscopy. This was not done and were further violations from accepted medical care and practice.

144.    A repeat urinalysis was performed at the MCC on or around September 11, 2019, again with abnormal results. However, no repeat urinalysis was recommended or ordered as required.

145.    Mr. Martinez again presented to medical health services in or around May 31, 2019 with blood in his urine, confirmed by urinalysis. Defendant BEAUDOUIN recommend a Urology consult at this time. However, despite the request for Urology consultation, upon information and belief, Mr. Martinez was not provided a urology consultation. This was a further departure from accepted medical practice.

146.    Once Medical Defendants noted the abnormal urinalysis results, abnormal CT Scan results (enlarged prostate and enlarged lymph nodes), and severely elevated PSA levels, it should have been appreciated that Mr. Martinez likely had a serious malignancy, most likely prostate cancer– a serious illness associated with metastasis and death which requires timely medical treatment. Therefore, the standard of care was to immediately refer Mr. Martinez to a Urology and/or Oncology specialist to consider surgical, radiological, chemotherapy and/or other medical treatment to properly evaluate and control Mr. Martinez's malignant disease.

147.    Upon information and belief, Defendants SINGH, KANG, and BEAUDOUIN are not urologists. Between May 31, 2019, and November 12, 2019, they examined Mr. Martinez on a regular basis for chronic hematuria and painful urination, but never referred him to a urologist. Upon information and belief, no rectal prostate exam was performed, as required.

148.    Mr. Martinez's condition continued to deteriorate and he began experiencing lower back pain. Again, no proper work-up for the back pain, which would include medical referrals and a lower thoracic CT Scan, was ordered or performed.

149.    As a direct, legal and proximate result of the foregoing, including the aforesaid negligent acts and omissions and medical malpractice of the defendants, Plaintiff suffered injuries and damages including but not limited to unmonitored prostate cancer, advanced prostate cancer, stage-four prostate cancer, bone metastasis, spinal cord compression, need for spinal cord decompression surgery, paralysis, incontinence, severe permanent neurological deficits, loss of chance of cure, decreased life expectancy, ileus, loss of the ability ambulate independently, need for extensive medical treatment including chemotherapy and radiation, excruciating pain and suffering, mental distress, fear, anxiety, and discomfort, frustration and loss of quality of life, loss of enjoyment and pleasures of life, as well as attendant losses, including, but not limited to, past and future medical expenses.

150.    Mr. Martinez's injuries were inflicted solely through the negligence of the defendants, and through no fault or want of care of negligence or contributory negligence on the part of Mr. Martinez.

151.    Defendants' conduct was grossly negligent in that defendants were so careless as to show complete disregard for the rights and safety of Mr. Martinez.

152.    Defendants engaged in willful misconduct in that defendants acted in such a reckless manner as to completely disregard the consequences of their actions.

153.    Acts and omissions of defendant BEAUDOUIN constitutes the tort of medical malpractice under the laws of the State of New York.

154.     Acts and omissions of defendant GEO constitutes the tort of medical malpractice under the laws of the State of New York.

155.     Acts and omissions of defendant SINGH constitutes the tort of medical malpractice under the laws of the State of New York.

156.     Acts and omissions of defendant KANG constitutes the tort of medical malpractice under the laws of the State of New York.

157.     Under the Federal Tort Claims Act, defendant United States of America is liable for the individual Defendants' acts and omissions within the scope of their employment.

## AS AND FOR A FOURTH CAUSE OF ACTION

### Plaintiff v. Defendant UNITED STATES OF AMERICA

### Federal Tort Claims Act- Negligence

158.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "157" of this complaint with the same force and effect as though fully set forth herein.

159.     Commencing on or about July 26, 2018, and at all times herein mentioned, Plaintiff remained a prisoner and in the custody of the BOP and was housed at QDF and MCC.

160.     At all the times herein mentioned, defendant United States of America, individually or through its agents, servants, and/or employees, operated maintained, managed, and controlled QDF and MCC.

161.     As set forth more fully above, including in the Statement of Facts, Defendants owed Plaintiff duties to provide proper medical care, and failed to comply with those duties.

162.     At all the times herein mentioned, it was the duty of the defendant United States of America, BOP, its agents, servants and/or employees including defendants GEO, WARDEN MC,

SINGH, KANG, and BEAUDOUIN to operate, maintain, and manage the said premises, protecting the health and safety of the inmates within.

163.    At all the times herein mentioned, it was the duty of the defendant United States of America, BOP, its agents, servants and/or employees including defendants GEO, WARDEN MC, SINGH, KANG, and BEAUDOUIN to ensure that inmates with requisite medical need are scheduled for, and taken to, appointments with external medical providers for proper care and treatment.

164.    The defendants, their agents, servants, and/or employees breached their duty to Plaintiff by failing to schedule or comply with the scheduled appointments at the external medical facilities, and by improperly allowing and permitting Plaintiff's malignant disease to remain untreated, despite his recurrent complaints, Sick Calls, and visits to the chronic care center.

165.    Additionally, once Mr. Martinez was transferred to Bellevue Hospital for emergent medical care, on or about November 12, 2019, and for approximately the next five months, Mr. Martinez was negligently and recklessly chained to his hospital bed causing further pain, suffering, and emotional distress.

166.    As a direct, legal and proximate result of the foregoing, including the aforesaid negligent acts and omissions and medical malpractice of the defendants, Plaintiff suffered injuries and damages including but not limited to unmonitored prostate cancer, advanced prostate cancer, stage-four prostate cancer, bone metastasis, spinal cord compression, need for spinal cord decompression surgery, paralysis, incontinence, severe permanent neurological deficits, loss of chance of cure, decreased life expectancy, ileus, loss of the ability to ambulate independently, need for extensive medical treatment including chemotherapy and radiation, excruciating pain and suffering, mental distress, fear, anxiety, and discomfort, frustration and loss of quality of life, loss

of enjoyment and pleasures of life, loss of income, as well as attendant losses, including, but not limited to, past and future medical expenses.

167. Ms. Martinez's injuries were inflicted through no fault of his own but were solely and wholly by reason of Defendants' failure to provide, or take steps to provide, proper care and treatment including timely referral to and treatment by a urologist, the need for which they had prior knowledge of through information provided to Defendants by Mr. Martinez and external medical providers.

168. Defendants' conduct was grossly negligent in that defendants were so careless as to show complete disregard for the rights and safety of Mr. Martinez.

169. Defendants engaged in willful misconduct in that defendants acted in such a reckless manner as to completely disregard the consequences of their actions.

170. By reason of the foregoing, the above described actions of the Defendants constitute the tort of negligence under the laws of the State of New York.

171. Under the Federal Tort Claims Act, defendant United States of America is liable for the individual Defendants' acts and omissions within the scope of their employment.

### AS AND FOR A FIFTH CAUSE OF ACTION

### Plaintiff v. Defendants GEO, KINGSBROOK, BROOKLYN HOSPITAL and MCPHEARSON, M.D.

### New York State Laws- Medical Malpractice

172. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "171" of this complaint with the same force and effect as though fully set forth herein.

173. At all times herein mentioned, GEO provided personnel, including doctors, nurses, physician assistants, and others for the care and treatment of its inmates and/or patients and which

held itself out to the public as offering professional services, medical care, treatment, and furnishing treatment facilities where inmates and/or patients, including plaintiff RICHARD MARTINEZ, could be treated for various ailments and could receive medical care, treatment and services.

174.    At all times hereinafter mentioned, defendant GEO undertook to and did provide medical, diagnostic and technical examinations, evaluations, consultations, care, treatments, procedures, services, or advise of, for and to Plaintiff.

175.    Defendant GEO departed from accepted standards of medical care and treatment with regard to the medical care and treatment provided to plaintiff RICHARD MARTINEZ. Once blood was noted in Mr. Martinez's urine in or around August 25, 2018, with a suspected UTI, a culture of the Mr. Martinez's urine should have been ordered by GEO to confirm that in fact Mr. Martinez had a UTI explaining the blood in his urine. Additionally, additional blood work, including a PSA test should have been ordered and performed as well as a rectal prostate exam. Imaging (including CT Scan) as well as cystoscopy should have been ordered as well at this time. This testing was not ordered or performed as required pursuant to accepted standards of medical care and treatment.

176.    At all pertinent times, KINGSBROOK was a hospital which provided personnel, including doctors, nurses, physician assistants, and others for the care and treatment of its patients and which held itself out to the public as offering professional services, medical care, treatment, and furnishing treatment facilities where patients, including Mr. Martinez, could be treated for various ailments and could receive medical care, treatment and services.

177.    On or around July 24, 2019, and prior and subsequent thereto, defendant KINGSBROOK undertook to and did provide medical, diagnostic and technical examinations, evaluations, consultations, care, treatments, procedures, services, or advise of, for and to Plaintiff.

178.    On or around July 24, 2019, Mr. Martinez was sent to KINGSBROOK where a CT Scan was performed, without contrast, of Mr. Martinez's abdomen and pelvis, for hematuria and to rule out a renal mass. The results from this scan included, "[M]ultiple enlarged lymph nodes with an enlarged prostate (5.1cm) and a clinical history of hematuria raises suspicion for malignancy. Recommend correlation with PSA." (emphasis added).

179.    In light of this markedly abnormal CT Scan, as well as the patient's other presenting signs and symptoms, as described above, KINGSBROOK need to ensure that a proper malignancy work-up was ordered and performed on Mr. Martinez, including referral to urology, referral to oncology, rectal prostate exam, prostate biopsy, PSA Labs, blood work, and additional testing including radiology. KINGSBROOK needed to ensure that a proper cancer work-up was performed for Mr. Martinez but failed to do so.

180.    KINGSBROOK failed to appreciate the significance of the patient's markedly abnormal CT Scan results as well as appreciate Mr. Martinez's signs and symptoms, warranting an admission to KINGSBROOK or another hospital for an emergent malignancy work-up.

181.    At all pertinent times, BROOKLYN HOSPITAL was a hospital which provided personnel, including doctors, nurses, physician assistants, and others for the car and treatment of its patients and which held itself out to the public as offering professional services, medical care, treatment, and furnishing treatment facilities where patients, including Mr. Martinez, could be treated for various ailments and could receive medical care, treatment and services.

182.    At all times hereinafter mentioned, defendant BROOKLYN HOSPITAL undertook to and did provide medical, diagnostic and technical examinations, evaluations, consultations, care, treatments, procedures, services, or advise of, for and to Plaintiff.

183.    At all times herein mentioned, defendant MCPHEARSON was a physician duly licensed to practice medicine in the State of New York, who held himself out to the general public, and in particular to RICHARD MARTINEZ, as a physician offering professional services and medical care and treatment.

184.    At all times hereinafter mentioned, defendant MCPHEARSON undertook to and did provide medical, diagnostic and technical examinations, evaluations, consultations, care, treatments, procedures, services, or advise of, for and to Plaintiff.

185.    On or around August 30, 2019, and prior and subsequent thereto, Mr. Martinez was taken to defendant BROOKLYN HOSPITAL due to his medical complaints and concerning testing described below. Mr. Martinez was treated at BROOKLYN HOSPITAL by medical staff, including defendant MCPHEARSON. Despite Mr. Martinez's concerning medical signs and symptoms, including chronic hematuria, painful urination, enlarged prostate, enlarged lymph nodes, hip pain, and severely elevated PSA levels, defendants BROOKLYN HOSPITAL and MCPHEARSON failed to order and/or recommend that Mr. Martinez, an inmate sent for medical attention, including evaluation and treatment of his cancer, be admitted to BROOKLY HOSPITAL (or another medical institution) for a malignancy work-up and treatment, including consultations by Urology and/or Oncology.

186.    The above medical care, diagnosis, treatment and services were rendered carelessly, unskillfully, and negligently, by defendants KINGSBROOK, BROOKLYN HOSPITAL and

MCPHEARSON, and not in accordance with accepted standards of medical care, diagnosis, treatment and services in the community as the standards existed at the time.

187.    Defendants GEO, KINGSBROOK, BROOKYN HOSPITAL and MCPHEARSON were negligent and departed from the accepted standards of medical of care and treatment in failing to promptly recommend that the Plaintiff undergo an urgent malignancy work-up, on an inpatient basis if necessary.  Defendants failed to properly monitor, diagnose and treat the Plaintiff's malignant condition.

188.    Defendants GEO, KINGSBROOK, BROOKYN HOSPITAL and MCPHEARSON were negligent and departed from accepted standards of medical of care and treatment in failing to inform the unit officer(s) or other BOP officers of Mr. Martinez's need to have access to a Urologist and/or Oncologist in a timely manner as his condition was expected to worsen, absent the diagnosis and treatment of his malignant condition.

189.    At all the times herein mentioned, it was the duty of reasonable care of defendant GEO to provide proper and adequate medical treatment and care to the Plaintiff within a reasonable time, and not to suffer and permit excessive punishment to him.

190.    At all the times herein mentioned, it was the duty of reasonable care of defendant KINGSBROOK to provide proper and adequate medical treatment and care to the Plaintiff within a reasonable time, and not to suffer and permit excessive punishment to him.

191.    At all the times herein mentioned, it was the duty of reasonable care of defendant BROOKLYN HOSPITAL to provide proper and adequate medical treatment and care to the Plaintiff within a reasonable time, and not to suffer and permit excessive punishment to him.

192.    At all the times herein mentioned, it was the duty of reasonable care of defendant MCPHEARSON to provide proper and adequate medical treatment and care to the Plaintiff within a reasonable time, and not to suffer and permit excessive punishment to him.

193.    As set forth herein, the defendants' diagnosis, care, and treatment of Mr. Martinez fell below acceptable standards and skills, and defendants breached the duty which they owed to Mr. Martinez.

194.    Defendant GEO breached its duty to the plaintiff by failing to provide proper and adequate urological medical treatment and care to the Plaintiff and his urgent and serious medical needs within a reasonable time despite requests and despite the obvious risks of permanent worsening of Plaintiff's conditions, and failing to implement urgent and necessary treatments including prompt referral to an urologist and/or oncologist as well as recommend hospital admission.

195.    Defendant KINGSBROOK breached its duty to the plaintiff by failing to provide proper and adequate urological medical treatment and care to the Plaintiff and his urgent and serious medical needs within a reasonable time despite requests and despite the obvious risks of permanent worsening of Plaintiff's conditions, and failing to implement urgent and necessary treatments including prompt referral to an urologist and/or oncologist as well as recommend hospital admission.

196.    Defendant BROOKLYN HOSPITAL breached its duty to the plaintiff by failing to provide proper and adequate urological medical treatment and care to the Plaintiff and his urgent and serious medical needs within a reasonable time despite requests and despite the obvious risks of permanent worsening of Plaintiff's conditions, and failing to implement urgent and necessary

treatments including prompt referral to an urologist and/or oncologist as well as recommend hospital admission.

197. Defendant MCPHEARSON breached his duty to the plaintiff by failing to provide proper and adequate urological medical treatment and care to the Plaintiff and his urgent and serious medical needs within a reasonable time despite requests and despite the obvious risks of permanent worsening of Plaintiff's conditions, and failing to implement urgent and necessary treatments including prompt referral to an urologist and/or oncologist as well as recommend hospital admission.

198. Defendants GEO, KINGSBROOK, BROOKLYN HOSPITAL, and MCPHEARSON were negligent and departed from the standard of care in other ways that are documented in the medical records and in ways of which Plaintiff are not yet aware.

199. As a direct, legal and proximate result of the foregoing, including the aforesaid negligent acts and omissions and medical malpractice of defendants GEO, KINGSBROOK, BROOKLYN HOSPITAL, and MCPHEARSON, Plaintiff suffered injuries and damages including but not limited to unmonitored prostate cancer, advanced prostate cancer, stage-four prostate cancer, bone metastasis, spinal cord compression, need for spinal cord decompression surgery, paralysis, incontinence, severe permanent neurological deficits, loss of chance of cure, decreased life expectancy, ileus, loss of the ability to ambulate independently, need for extensive medical treatment including chemotherapy and radiation, excruciating pain and suffering, mental distress, fear, anxiety, and discomfort, frustration and loss of quality of life, loss of enjoyment and pleasures of life, loss of income, as well as attendant losses, including, but not limited to, past and future medical expenses.

200.    This action falls within one or more of the exceptions set forth in CPLR 1602, and as such, the defendants are jointly and severally liable pursuant to the exceptions set forth in Article 16 of the CPLR.

201.    Pursuant to CPLR Section 1602(2) (iv), defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that defendants owed Plaintiff a non-delegable duty of care.

202.    Pursuant to CPLR Section 1602(7), defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said defendants acted with reckless disregard for the safety of others including Plaintiff RICHARD MARTINEZ.

203.    Mr. Martinez's injuries were inflicted through no fault of his own but were solely and wholly by reason of Defendants' failure to provide, or take steps to provide, proper care and treatment including timely referral to and treatment by an oncologist or urologist, the need for which they had prior knowledge of through information provided to Defendants by Mr. Martinez and external medical providers.

204.    Defendant GEO's conduct was grossly negligent in that he was so careless as to show complete disregard for the rights and safety of Ms. Richardson.

205.    Defendant GEO engaged in willful misconduct in that he acted in such a reckless manner as to completely disregard the consequences of his actions.

206.    Defendant KINGSBROOK's conduct was grossly negligent in that he was so careless as to show complete disregard for the rights and safety of Ms. Richardson.

207.    Defendant KINGSBROOK engaged in willful misconduct in that he acted in such a reckless manner as to completely disregard the consequences of his actions.

208.    Defendant BROOKLYN HOSPITAL's conduct was grossly negligent in that he was so careless as to show complete disregard for the rights and safety of Ms. Richardson.

209.    Defendant BROOKLYN HOSPITAL engaged in willful misconduct in that he acted in such a reckless manner as to completely disregard the consequences of his actions.

210.    Defendant MCPHEARSON's conduct was grossly negligent in that he was so careless as to show complete disregard for the rights and safety of Ms. Richardson.

211.    Defendant MCPHEARSON engaged in willful misconduct in that he acted in such a reckless manner as to completely disregard the consequences of his actions.

212.    By reason of the foregoing, the above described actions of defendants GEO, KINGSBROOK, BROOKLYN HOSPITAL, and MCPHEARSON, constitute the tort of medical a malpractice under the laws of the State of New York.

### AS AND FOR A SIXTH CAUSE OF ACTION

### Plaintiff v. Defendant UNITED STATES OF AMERICA

### Federal Tort Claims Act- Negligent Hiring and Retention

213.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "212" of this complaint with the same force and effect as though fully set forth herein.

214.    Defendant UNITED STATES OF AMERICA was negligent in hiring and supervising medical, emergency medical, administrative, nursing, and related healthcare personnel who were careless, unskillful, negligent, and who did not possess the requisite knowledge and skill

of medical, emergency medical, administrative, nursing, and healthcare professionals in the community.

215.    Defendant UNITED STATES OF AMERICA was negligent, careless and reckless in their extension and renewal of privileges to and/or in their hiring, supervising, and retention of medical, emergency medical, administrative, physician assistants, nurses, and/or other staff and personnel, who did not possess the requisite knowledge and skill of said practitioners and specialists in the community and whom defendants knew or reasonably should have known did not possess said requisite knowledge and skill.

216.    As a direct, legal and proximate result of the foregoing, Plaintiff suffered injuries and damages including but not limited to unmonitored prostate cancer, advanced prostate cancer, stage-four prostate cancer, bone metastasis, spinal cord compression, need for spinal cord decompression surgery, paralysis, incontinence, severe permanent neurological deficits, loss of chance of cure, decreased life expectancy, ileus, loss of the ability to ambulate independently, need for extensive medical treatment including chemotherapy and radiation, excruciating pain and suffering, mental distress, fear, anxiety, and discomfort, frustration and loss of quality of life, loss of enjoyment and pleasures of life, loss of income, as well as attendant losses, including, but not limited to, past and future medical expenses.

217.    This action falls within one or more of the exceptions set forth in CPLR 1602, and as such, the defendants are jointly and severally liable pursuant to the exceptions set forth in Article 16 of the CPLR.

218.    Pursuant to CPLR Section 1602(2) (iv), defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of

the provisions of CPLR Section 1601, by reason of the fact that defendants owed Plaintiff a non-delegable duty of care.

219.    Pursuant to CPLR Section 1602(7), defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said defendants acted with reckless disregard for the safety of others including Plaintiff RICHARD MARTINEZ.

## JURY DEMAND

1.  Plaintiff demands a trial by jury in this action as to his <u>Bivens</u> claims and his state law claims against defendants GEO, KINGSBROOK, BROOKLYN HOSPITAL, and MCPHEARSON.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff pray that this Honorable Court enter judgment against the Defendants and request:

1.  An award of general and special damages in an amount to be determined at trial, plus prejudgment interest as permitted by law, for any and all monetary and/or non-monetary losses suffered by Plaintiff;

2.  An award of punitive damages as to the <u>Bivens</u> claims in an amount to be determined at trial;

3.  All other relief sought by Plaintiff under this Complaint;

4.  An award of costs that Plaintiff have incurred in his action, including, but not limited to, reasonable attorneys' fees and costs to the fullest extent permitted by law; and

5.  Such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        September 4, 2020

                        Yours, etc.,
                        THE JACOB D. FUCHSBERG LAW FIRM, LLP

        By:     **/s/ Eli A. Fuchsberg**
                ELI A. FUCHSBERG
                Attorneys for Plaintiff
                3 Park Avenue, Suite 3700
                New York, NY 10016
                (212) 869-3500
                e.fuchsberg@fuchsberg.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

RICHARD MARTINEZ,                                    **Civil Action No.**
                                                     **1:20-cv-7275**
                        Plaintiff,

-against-

                                                     **CERTIFICATE OF**
UNITED STATES OF AMERICA,                            **MERIT**
ROBERT BEAUDOUIN, M.D.,
MANDEEP SINGH, P.A., YOON KANG, P.A.,
WARDEN MCC, THE GEO GROUP, INC.,
KINGSBROOK JEWISH MEDICAL CENTER,                    **ECF Action**
THE BROOKLYN HOSPITAL CENTER,
PHILLIP MCPHEARSON, M.D., and
JOHN/JANE DOES Nos. 1-10,

                        Defendants.
--------------------------------------------------------------------X

    ELI A. FUCHSBERG, the undersigned, an attorney admitted to practice in the Courts of New

York State, states that he is a partner at The Jacob D. Fuchsberg Law Firm, LLP, attorneys for the

plaintiffs in the within action.  I have reviewed the facts of this case and have consulted with at least

one physician who is licensed to practice in this State or any other state and who I reasonably believe

is knowledgeable in the relevant issues involved in this action, and I have concluded on the basis of

such review and consultation that there is a reasonable basis for the commencement of this action.

Dated:  New York, New York
        September 4, 2020

                                    Yours, etc.,
                                    THE JACOB D. FUCHSBERG LAW FIRM, LLP

                        By:    **/s/ Eli A. Fuchsberg**
                               ELI A. FUCHSBERG
                               Attorneys for Plaintiff
                               3 Park Avenue, Suite 3700
                               New York, NY 10016
                               (212) 869-3500
                               e.fuchsberg@fuchsberg.com

46